Stanley R. Apps (State Bar No. 309425)
4424 Bellingham Avenue
Studio City, CA 91604
Telephone: (310) 709-3966
E-mail: stan@appsatlaw.com

Of Counsel to:
CREDIT REPAIR LAWYERS OF AMERICA
39111 Six Mile Road, Suite 142
Livonia, MI 48152
Telephone: (248) 353-2882
Facsimile: (248) 353-4840

*Attorneys for Plaintiff Lisa Torres*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| Lisa Torres,<br><br>        Plaintiff,<br>vs.<br><br>Block, Inc.; and Sutton Bank,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF THE ELECTRONIC FUND TRANSFERS ACT, 15 U.S.C. § 1693, et seq., AND FOR VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, et. seq.**<br><br>**JURY TRIAL DEMANDED** |

1

NOW COMES the Plaintiff, LISA TORRES, by and through her counsel, and for her Complaint against the Defendants pleads as follows:

## I. INTRODUCTION

1. Plaintiff Lisa Torres ("Plaintiff" or "Torres") is a victim of identity theft.

2. The perpetrators ("Fraudsters"), who are unknown to Plaintiff, misrepresented themselves online and/or by telephone in a successful effort to obtain access to Plaintiff's Cash App ("Cash App"), a cellphone application by which Plaintiff conducts her personal banking for personal, family and household use. The Fraudsters drained her bank account at Sutton Bank of $2,734 through use of her Cash App.

3. Although Torres immediately disputed this bogus electronic transfer, both the Bank and the provider of Cash App (collectively "Defendants") have declined her dispute and have refused to restore her funds.

## II. PARTIES

4. Plaintiff is a natural person and citizen of the State of California, residing in San Bernardino County, California

5. Plaintiff is a "Consumer" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(6) ("EFTA"). The account at issue was used for personal, family, or household purposes.

6. Defendant Block, Inc. is an American financial services merchant services aggregator and mobile payment company headquartered in San Francisco, California. It owns, operates and manages a cellphone application program known as "Cash App."

7. Defendant Block, Inc. is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9) in its own right, and as the agent of Sutton Bank.

8. Defendant Block, Inc. is also a provider of electronic fund transfer services. *See* 12 C.F.R. § 1005.14(a).

9. Defendant Sutton Bank is a state-chartered banking association and is chartered and located in Ohio.

10. Defendant Sutton Bank is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9). It is a known and disclosed partner of Block, Inc. and provides banking services for Cash App.

### III.   JURISDICTION AND VENUE

11. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for Plaintiff's state law claim pursuant to 28 U.S.C. § 1367. Jurisdiction over Plaintiff's claim for declaratory relief is conferred on this Court by 28 U.S.C. §2201.

12. Venue is proper in this district because Plaintiff resides in this district and a substantial part of the events and occurrences underlying this litigation occurred within this district.

### IV.    FACTS

13. Cash App is a popular mobile payment software application offered by Defendant Block, Inc. that facilitates sending and receiving money.

14. Defendant Sutton Bank holds the accounts of Cash App's users, including the Plaintiff's account at issue in this case.

15. Defendants operated as a common enterprise while engaging in unlawful conduct, including the violations of law described herein. Hence, Defendants are jointly and severally liable for the acts or practices alleged herein.

16. As Defendants are well aware, fraudulent scams in which criminals pose as legitimate sellers and/or Cash App users are extraordinarily common on Cash App.  See, e.g., https://www.suttonbank.com/services-tools/tools/prepaid-card-support.html; https://www.nytimes.com/2020/10/11/technology/fraud-payment-apps.html; https://myfox8.com/news/cash-app-scam-could-wipe-out-your-bank-account/; https://www.consumer.ftc.gov/articles/mobile-payment-apps-how-avoid-scam-when-you-use-one.  Plaintiff was the victim of just such a Cash App scam.

17. On March 15, 2024 at 4:00 a.m. Mountain time (all times listed herein are Mountain time), Plaintiff was awakened from her sleep by a text message that she had received from Cash App stating that $2,734 was taken from her account at Sutton Bank.

18. Plaintiff uses her Cash App account to deposit her paychecks and to make distributions therefrom for personal, family and household use.

19. Plaintiff immediately attempted to call Cash App's offices, but they were closed until 6:00 a.m.

20. At 6:00 a.m. that morning, Plaintiff called Cash App's offices and informed the Defendants of the fraudulent transaction. She informed the Defendants that the removal of the $2,734 from her account at Sutton Bank was fraudulent and unauthorized by her.

21. Even while she was on the phone with the Defendants, the fraudsters continued to attempt other cash withdrawals.

22. At 6:23 a.m. on that same day, the fraudster(s) attempt to send $100 and $50 to someone named Megan Miller. These attempts failed.

23. At 7:24 a.m. on that same day, Plaintiff received an email from the Defendants, asking her to answer a series of questions and provide proof of her dispute. She promptly responded with all of the information requested from them.

24. On March 18, 2024, Plaintiff sent an email to the Defendants stating she never provided her log in credentials for Cash App to anyone.

25. On March 20, 2024, Plaintiff received an email from "Roger" with the Defendants, declining her dispute and (mis)informing her that the transaction draining her bank account with Sutton was authorized.

26. On March 21, 2024, Plaintiff received a formal communication from the Defendants in which they declined her dispute. It also informed her that she should file a police report, which she subsequently did.

27. Plaintiff responded to Cash App and implored the Defendants to reconsider their decision as, again, the transaction that drained her account was not performed nor authorized by her.

28. The Defendants relented and in an email of March 21, 2024, "Max" from CashApp asked Plaintiff, again, to respond to a series of questions.

29. On March 25, 2024, Plaintiff responded to Max's questions. However, the Defendants refused to consider her answers because she responded more than 3 days after she was asked these questions. The Defendants never informed Plaintiff of their arbitrary and capriciously selected number of 3 days to respond.

30. On March 26, 2024, the Defendants closed their investigation and, again, inaccurately determined that Plaintiff authorized someone to use her Cash App

account. They, again, declined her dispute, without any proof that the transaction was authorized by her.

31. Plaintiff, again, disputed the Defendants' incorrect conclusion and again, implored Defendants to re-open an investigation. The Defendants' investigation was not reasonable.

32. On March 27, 2024, Cash App's "Casey" responded and agreed to initiate a third investigation on behalf of the Defendants. He posed the same questions that Plaintiff had responded to earlier, once again. Plaintiff also promptly responded to these questions.

33. On March 29, 2024, the Defendants quickly closed the dispute in the bank's favor and have declined to reopen it again.

34. On April 3, 2024, Plaintiff obtained a police report documenting her loss. She has now been forced to file this lawsuit to be reunited with her money.

35. The Defendants' investigations were not reasonable. The Defendants have no proof that the Plaintiff authorized this transaction.

### V. FIRST CLAIM FOR RELIEF
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq*.)**

36. Plaintiff repeats and realleges the allegations contained in the above paragraphs and reincorporates them with the same force and effect as if set forth specifically herein.

37. The Electronic Funds Transfers Act ("EFTA") places sharp limitations on consumer liability for unauthorized transactions.

38. Because Plaintiff did not give actual authority to the Fraudster to initiate the transfers, the transactions initiated by the Fraudster constituted unauthorized electronic fund transfers under § 1693a(12). *See, e.g.*, Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.") ("Fraud Exception").

39. Such transactions do not qualify for the exception under § 1693a(12)(A) because Plaintiff did not "furnish" the fraudsters with the codes; instead, as provided in 12 C.F.R. §1005.2, the transfers were initiated by people who obtained the Plaintiff's codes through fraud and are therefore unauthorized electronic fund transfers. *See, e.g.*, Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

40. Moreover, "[I]f the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution." 12

CFR Sec. 1005.6 ("Liability of consumer for unauthorized transfers"); *see also* 15 U.S.C. § 1693g ("Consumer liability").

41. Defendants violated the EFTA by holding Plaintiff responsible for the full amount of the unauthorized transfer rather than the limits set forth in 15 U.S.C. § 1693g(a).

42. Pursuant to the EFTA, 15 U.S.C. § 1693f(a), Defendants must investigate an unauthorized transaction once the consumer provides a minimum of information.

43. The statute provides in relevant part that:

> [O]nce the consumer provides oral or written notice in which the consumer --
>
> (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
> (2) indicates the consumer's belief that the documentation, or, . . . the consumer's account, contains an error and the amount of such error; and
> (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred, the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within 10 business days.

44. Thus, once the account holder provides (1) the name and account number of the consumer; (2) indicates a belief that there is an error and (3) sets forth the reasons for the belief that there is an error, Defendants must ("shall") investigate. 15 U.S.C. § 1693f (Error Resolution).

45. The EFTA, Section 1693(f) defines "errors" broadly:

> (f) ACTS CONSTITUTING ERROR.--For the purpose of this section, an error consists of—
>
> (1) an unauthorized electronic fund transfer;
> (2) an incorrect electronic fund transfer from or to the consumer's account;
> (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included;
> (4) a computational error by the financial institution;
> (5) the consumer's receipt of an incorrect amount of money from an electronic terminal;
> (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this title; or
> (7) any other error described in regulations of the Bureau.

*See also* Regulation E, 12 C.F.R. § 1005.33 ("Procedures for resolving errors"); Official Interpretation of Regulation E, 11(b)(1) ("Notice of Error From Sender").

46. If the financial institution determines after its investigation that no error has occurred, it must provide an explanation and inform the consumer of certain rights.

47. Specifically, 15 U.S.C. § 1693f (Error Resolution) states:

> (d) Absence of error; finding; explanation
>
> If the financial institution determines after its investigation pursuant to subsection (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the

consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

48. In this case, the Defendants failed to conduct a reasonable investigation into the Plaintiff's dispute.

49. The Defendants also failed to deliver reproductions of all documents that support their erroneous conclusion that the Plaintiff authorized the electronic transaction at issue in this case.

50. Even though Plaintiff provided the requested information, the dispute was summarily rejected without the explanation and disclosure of the right to investigatory materials required under Section 1693f(d).

51. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

52. Specifically, pursuant to Section 1693g(b), it is Defendant's burden to prove that the disputed transfer was authorized:

> (b) BURDEN OF PROOF.--In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was

11

initiated after the effective date of section 905, that the disclosures required to be made to the consumer under section 905(a)(1) and (2) are in fact made in accordance with such section.

53. Defendants violated the EFTA by unlawfully imposing upon Plaintiff the burden of proof by denying Plaintiff's claim on grounds of her failing to respond within 3 business days.

54. There is no law or regulation to support the Defendant's contention that it may presume that the Plaintiff is responsible for the electronic transaction if she fails to respond to follow up questions within 3 days.  By implementing this policy, the Defendants have avoided their responsibility to conduct a reasonable investigation under the EFTA.

55. An accountholder's rights under the EFTA are non-waivable. Section 1693l ("Waiver of rights") states, in relevant part: "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

56. Defendants' acts and omissions set forth above constitute violations of the EFTA.

57. As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff is entitled to an award of statutory damages and actual damages, including damages for emotional distress, as well as attorney's fees and costs.

58. Defendants' failure and refusal to conduct a reasonable investigation and their imposition of the burden of proof on the consumer, contrary to statute, constitute a failure to investigate in good faith and a failure to establish a reasonable basis for believing that the consumers' account was not in error.

59. Defendants' actions also constitute a knowing and willful conclusion that the account at issue was not in error when such conclusion could not reasonably have been drawn from the available evidence. These practices thus constitute a violation of 1693f(e), entitling Plaintiff to treble damages.

## VI.     SECOND CLAIM FOR RELIEF
### (Unlawful Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et. seq.)

60. Plaintiff repeats and realleges the allegations contained in the above paragraphs and reincorporates them with the same force and effect as if set forth specifically herein.

61. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*.

62. Defendant Block, Inc. is headquartered in California and all or a substantial part of the misconduct at issue occurred in California and/or emanated from California.

63. Defendants' business practices fail to comply with the requirements of the EFTA and Regulation E and are, therefore, unlawful under the UCL.

64. The EFTA places sharp limitations on consumer liability for unauthorized transactions. See 15 U.S.C. § 1693g ("Consumer liability"); 12 C.F.R. § 1005.6 ("Liability of consumer for unauthorized transfers").

65. The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two business days after learning of the loss or theft of an access device such as a prepaid debit card. 12 C.F.R. § 205.6(b)(1).

66. The EFTA places sharp restrictions on what information can be required of a consumer as a condition of opening, investigating, or favorably resolving a claim, 15 U.S.C.§ 1693f.

67. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

68. In addition, the EFTA requires that denials include a meaningful explanation of the reason for the denial and a disclosure of the consumer's rights to documents. 15 U.S.C. §1693f(d).

69. As set forth above, Defendants failed to comply with these and other requirements of the EFTA and Regulation E.

70. Under the UCL, Plaintiff may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of or through the use of these unlawful acts or practices.

71. Plaintiff is entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore, to any person in interest, any money or property that Defendants retained by means of such unlawful business practices.

72. In addition, Plaintiff may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

### VII.     THIRD CLAIM FOR RELIEF
**(Unfair Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200)**

73. Plaintiff repeats and realleges the allegations contained in the above paragraphs and reincorporates them with the same force and effect as if set forth specifically herein.

74. Defendants' acts or practices, including failure to properly investigate accountholder's disputes, placement of the onus on cardholder to prove that transactions are fraudulent, and failure to promptly credit cardholder's accounts for fraudulent transactions despite both legal obligations and promises to do so, are unfair.

75. Plaintiff lost money as a result of Defendants' unfair violations of the UCL, specifically the amounts they were entitled to be reimbursed for fraudulent transactions that she did not initiate nor authorize.

76. Under the UCL, Plaintiff may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of and through the use of these unlawful acts and practices.

77. Plaintiff is entitled to declaratory and injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, Defendants retained by means of such unfair business practices.

78. Plaintiff may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in his favor and damages against Defendants:

A. An award of actual damages, including damages for emotional distress, treble damages, statutory damages, punitive damages, and nominal damages;

B. An order of restitution;

C. Prejudgment interest;

D. Attorney's fees, costs, and expenses;

E. An order finding and declaring that Defendant's acts and practices as challenged herein are unlawful, unfair, and fraudulent;

F. Injunctive relief precluding Defendants from continuing to engage in the acts or practices described throughout this Complaint; and

G. Such other and further relief as may be necessary, just, and proper.

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted,

Dated: April 15, 2024

/s/ Stanley R. Apps
Stanley R. Apps
Attorney for Plaintiff